## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARK THORPE and NICHOLAS MOON, each individually and on behalf of all others similarly situated; and LaTOYA CHAVIS-BURTON, individually, on behalf of all others similarly situated, and as representative of the California Labor & Workforce Development Agency,<br><br>v.<br><br>EXEL INC. d/b/a DHL SUPPLY CHAIN (USA) | Case No. _____<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action<br><br><br><br><br><br><br><br>Jury Trial Demanded |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.       Like many other companies across the United States, Excel Inc. d/b/a DHL Supply Chain (USA)'s ("DHL") timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.       That hack led to problems in timekeeping and payroll throughout DHL's organization.

3.       As a result, DHL's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked after the onset of the Kronos hack.

4.       Plaintiffs are three such DHL workers.

5.       DHL could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.     Instead, DHL pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7.     DHL made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

8.     After significant delay, DHL made payment of some of these outstanding wages. However, portions of these earned wages remain unpaid.

9.     DHL's failure to pay wages, including proper overtime, on time and in full for all hours worked, violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10.     DHL's failure to pay wages, including proper overtime, on time and in full for all hours worked, to its workers in Illinois also violates the the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1 *et seq.*

11.     DHL's failure to pay wages, including proper overtime, on time and in full for all hours worked, to its workers in California also violates applicable California law.

12.     Plaintiffs bring this lawsuit to recover these unpaid overtime wages and other damages owed by DHL to her and DHL's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but DHL's decision to make its own non-exempt employees workers bear the economic burden for the hack.

13.     This action seeks to recover the unpaid wages and other damages owed by DHL to all these workers, along with the penalties, interest, and other remedies provided by federal, Illinois, and California law.

**JURISDICTION & VENUE**

14.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because DHL resides in this District.

**PARTIES**

17.     **Plaintiff Mark Thorpe** is a natural person.

18.     Thorpe was, at all relevant times, an employee of DHL.

19.     Thorpe has worked for DHL since before December 2021.

20.     Thorpe worked for DHL in Georgia.

21.     **Plaintiff Nicholas Moon** is a natural person.

22.     Moon was, at all relevant times, an employee of DHL.

23.     Moon has worked for DHL from August 2021 to January 2022.

24.     Moon worked for DHL in Illinois.

25.     Between December 2021 and January 2022, Moon performed work for DHL in Illinois.

26.     **Plaintiff LaToya Chavis-Burton** is a natural person.

27.     Chavis-Burton was, at all relevant times, an employee of DHL.

28.     Chavis-Burton worked for DHL from March 2021 to April 2022.

29.     Chavis-Burton worked for DHL in California.

30.     Between December 2021 and April 2022, Chavis-Burton performed work for DHL in Calfornia.

31.     Plaintiffs represent at least three groups of similarly situated DHL workers.

32.     Thorpe, Moon, and Chavis-Burton represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of DHL (including its subsidiaries and alter egos), who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

33.     Moon represents a class of similarly situated workers under Illinois law pursuant to Federal Rule of Civil Procedure 23. This "Illinois Class" is defined as:

> **All current or former non-exempt employees of DHL (including its subsidiaries and alter egos) who worked in Illinois at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

34.     Chavis-Burton represents a class of similarly situated workers under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

> **All current or former non-exempt employees of DHL (including its subsidiaries and alter egos) who worked in California at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

35.     Throughout this Complaint, the FLSA Collective, Illinois Class, and California Class members are referred to jointly as the "Similarly Situated Workers."

36.     Chavis-Burton also brings suit as the statutory representative of the California Labor & Workforce Development Agency ("LWDA"), on behalf of herself and all other

current of former employees affected by the pay practices at issue in this lawsuit, pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

37.    **Defendant Exel Inc. d/b/a DHL Supply Chain ("DHL")** is a domestic corporation.

38.    DHL may be served by service upon its registered agent, **CT Corporation System, 155 Federal St., Ste. 700, Boston, MA 02110**, or by any other method allowed by law.

39.    At all relevant times, DHL has been doing business under the assumed name, "DHL."

40.    At all relevant times, DHL has been doing business under the assumed name, "DHL Express."

41.    At all relevant times, DHL has been doing business under the assumed name, "DHL Solutions."

42.    At all relevant times, DHL has been doing business under the assumed name, "DHL Worldwide Express."

43.    At all relevant times, DHL has been doing business under the assumed name, "DHL Global Forwarding."

44.    At all relevant times, DHL has been doing business under the assumed name, "DHL Freight."

45.    At all relevant times, DHL has been doing business under the assumed name, "DHL eCommerce Solutions."

46.    At all relevant times, DHL exerted operational control over its subsidiaries and alter egos.

47.     At all relevant times, DHL substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

48.     At all relevant times, DHL had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

49.     DHL employed and/or jointly employed, with its subsidiaries and alter egos, Thorpe and the Similarly Situated Workers.

50.     DHL and its subsidiaries and alter egos are joint employers for purposes of the FLSA.

51.     DHL are joint employers for purposes of the FLSA.

52.     DHL and its subsidiaries and alter egos are joint employers for purposes of Illinois law.

53.     DHL and its subsidiaries and alter egos are joint employers for purposes of California law.

54.     Throughout this Complaint, DHL and its subsidiaries and alter egos are referred to jointly as "DHL."

### COVERAGE UNDER THE FLSA

55.     At all relevant times, DHL was and is an employer of Plaintiffs within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

56.     At all relevant times, DHL was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

57.     At all relevant times, DHL was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

58.     During at least the last three years, DHL has had gross annual sales in excess of $500,000.

59.     At all relevant times, DHL was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

60.     DHL employs many workers, including Plaintiffs, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

61.     The goods and materials handled, sold, or otherwise worked on by Plaintiffs and other DHL employees and that have been moved in interstate commerce include, but are not limited to, parcels and vehicles.

FACTS

1.     DHL is a logistics company. DHL USA, About Us, https://www.dhl.com/us-en/home/about-us.html (last visited June 27, 2022).

2.     DHL employs over 400,000 workers. DHL USA, About Us, https://www.dhl.com/us-en/home/about-us.html (last visited June 27, 2022).

3.     Many of DHL's employees are non-exempt hourly and salaried workers.

4.     Since at least 2021, DHL has used timekeeping software and hardware operated and maintained by Kronos.

5.     On or about December 11, 2021, Kronos was hacked with ransomware.

6.     The Kronos hack interfered with the ability of its customers, including DHL, to use Kronos's software and hardware to track hours and pay employees.

7.    For at least a portion of time following the Kronos hack, DHL failed to keep accurate track of the hours that Atkinson and Similarly Situated Workers worked.

8.    Instead, DHL has used various methods to estimate the number of hours Atkinson and Similarly Situated Workers work in each pay period.

9.    For example, DHL issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

10.    As a result of DHL's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

11.    Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

12.    Plaintiffs are three of the thousands of DHL employees affected by these pay and timekeeping practices.

13.    Instead of paying Plaintiffs for the hours they actually worked (including overtime hours), DHL simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Plaintiffs' actual hours worked and regular pay rates, in multiple workweeks.

14.    In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

15.    DHL knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

16.     DHL knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

17.     DHL could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

18.     Instead of accurately tracking hours and paying employees their overtime, DHL decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

19.     It was feasible for DHL to have its employees and managers report accurate hours so they could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

20.     But DHL chose not to do that.

21.     In other words, DHL pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

22.     Plaintiffs are just three of the many DHL employees who had to shoulder the burden of this decision by DHL.

23.     Thorpe is and was a non-exempt hourly employee of DHL.

24.     Thorpe regularly worked over 40 hours per week for DHL.

25.     Thorpe's normal, pre-Kronos hack hours are reflected in DHL's records.

26.     Since the Kronos hack, DHL has not paid Thorpe on time, if at all, for his actual hours worked each week.

27.     Thorpe worked for DHL as a fulfillment specialist.

28.    Thorpe worked with customer packages being transported by DHL.

29.    Many of the packages Thorpe worked with were moving in interstate transport.

30.    Many of the packages Thorpe worked with originated in Georgia and were being transported by DHL outside of Georgia.

31.    Many of the packages Thorpe worked with originated outside of Georgia and were being transported by DHL into Georgia.

32.    Many of the packages Thorpe worked with were moving in foreign commerce.

33.    Many of the packages Thorpe worked with originated in the United States and were being transported by DHL outside of the United States.

34.    Many of the packages Thorpe worked with originated outside of the United States and were being transported by DHL into the United States.

35.    Moon is and was a non-exempt hourly employee of DHL.

36.    Moon regularly worked over 40 hours per week for DHL.

37.    Moon's normal, pre-Kronos hack hours are reflected in DHL's records.

38.    Since the Kronos hack, DHL has not paid Moon on time, if at all, for his actual hours worked each week.

39.    Moon worked for DHL as a forklift operator.

40.    Moon's job duties for DHL included re-packaging packages being transported by DHL into pallets so they could be transported further by DHL.

41.    Moon's job duties for DHL included transporting pallets via forklift while they were en route to their final destinations.

42.     Many of the packages and pallets Moon worked with were moving in interstate transport.

43.     Many of the packages and pallets Moon worked with originated in Illinois and were being transported by DHL outside of Illinois.

44.     Many of the packages and pallets Moon worked with originated outside of Illinois and were being transported by DHL into Illinois.

45.     Many of the packages and pallets Moon worked with were moving in foreign commerce.

46.     Many of the packages and pallets Moon worked with originated in the United States and were being transported by DHL outside of the United States.

47.     Many of the packages and pallets Moon worked with originated outside of the United States and were being transported by DHL into the United States.

48.     Chavis-Burton was a non-exempt hourly employee of DHL.

49.     Chavis-Burton regularly worked over 40 hours per week for DHL.

50.     Chavis-Burton's normal, pre-Kronos hack hours are reflected in DHL's records.

51.     Since the Kronos hack, DHL has not paid Chavis-Burton on time, if at all, for her actual hours worked each week.

52.     Chavis-Burton's job duties for DHL including inspecting packages as they moved through DHL's systems to their destinations, as well as other products and machinery responsible for moving DHL's customers' packages to their destinations.

53.     Many of the packages Chavis-Burton worked with were moving in interstate transport.

54. Many of the packages Chavis-Burton worked with originated in California and were being transported by DHL outside of California.

55. Many of the packages Chavis-Burton worked with originated outside of California and were being transported by DHL into California.

56. Many of the packages Chavis-Burton worked with were moving in foreign commerce.

57. Many of the packages Chavis-Burton worked with originated in the United States and were being transported by DHL outside of the United States.

58. Many of the packages Chavis-Burton worked with originated outside of the United States and were being transported by DHL into the United States.

59. Since the hack took place, DHL has not accurately recorded the hours worked by Plaintiffs and its other workers, in multiple workweeks.

60. DHL was aware of the overtime requirements of the FLSA.

61. DHL nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Atkinson.

62. DHL's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

63. The full overtime wages owed to Plaintiffs and the Similarly Situated Workers became "unpaid" when the work for DHL was done—that is, on Atkinson and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985),

*modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

64.    At the time DHL failed to pay Plaintiffs and the Similarly Situated Workers in full for their overtime hours by their regular paydays, DHL became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under the law.

65.    In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

66.    Any payment made by DHL to Plaintiffs or the Similarly Situated Workers that DHL may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

67.    The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

68.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to DHL's acts and omissions resulting in the unpaid wages in the first place.

69.    Plaintiffs and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by DHL under federal, Illinois, and California law.

### COLLECTIVE ACTION ALLEGATIONS

70.    Numerous individuals were victimized by DHL's patterns, practices, and policies, which are in willful violation of the FLSA.

71.     Plaintiffs and the FLSA Collective are all workers engaged in foreign commerce.

72.     Plaintiffs and the FLSA Collective are all workers engaged in interstate commerce.

73.     Based on their experience and tenure with DHL, as well as coverage of the Kronos hack, Plaintiffs are aware that DHL's illegal practices were imposed on the FLSA Collective.

74.     The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

75.     These employees are victims of DHL's respective unlawful compensation practices and are similarly situated to Plaintiffs in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

76.     The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

77.     Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

78.     DHL's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of Plaintiffs or the FLSA Collective members.

79.     The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

CLASS ACTION ALLEGATIONS—ILLINOIS LAW

80.     The illegal practices DHL imposed on Moon were likewise imposed on the Illinois Class members.

81.     Numerous other individuals who worked for DHL were were not properly compensated for all hours worked, as required by Illinois law.

82.     Moon and the Illinois Class are all workers engaged in foreign commerce.

83.     Moon and the Illinois Class are all workers engaged in interstate commerce.

84.     The Illinois Class is so numerous that joinder of all members of the class is impracticable.

85.     DHL imposed uniform practices and policies on Moon and the Illinois Class members regardless of any individualized factors.

86.     Based on his experience and tenure with DHL, as well as coverage of the Kronos hack, Moon is aware that DHL's illegal practices were imposed on the Illinois Class members.

87.     Illinois Class members were all not paid their proper overtime on time, if at all,  when they worked in excess of 40 hours per week.

88.     DHL's failure to pay wages and overtime compensation in accordance with Illinois law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

89.     Moon's experiences are therefore typical of the experiences of the Illinois Class members.

90.     Moon has no interest contrary to, or in conflict with, the members of the Illinois Class. Like each member of the proposed class, Moon has an interest in obtaining the unpaid wages and other damages owed under the law.

91.     A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

92.     Absent this action, many Illinois Class members likely will not obtain redress of their injuries and DHL will reap the unjust benefits of violating Illinois law.

93.     Furthermore, even if some of the Illinois Class members could afford individual litigation against DHL, it would be unduly burdensome to the judicial system.

94.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

95.     The questions of law and fact common to each of the Illinois Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether Moon and the Illinois Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b.    Whether DHL's failure to pay Moon and the Illinois Class members their proper overtime rates violated the IMWL;

    c.    Whether DHL paid Moon and the Illinois Class members all wages due within the period of time allowed by the IWPCA;

    d.    Whether DHL's failure to timely pay wages to Moon and the Illinois Class members violated the IWPCA.

96.     Moon's claims are typical of the Illinois Class members. Moon and the Illinois Class members have all sustained damages arising out of DHL's illegal and uniform employment policies.

97.     Moon knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

98.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

## CLASS ACTION ALLEGATIONS—CALIFORNIA LAW

97.     The illegal practices DHL imposed on Chavis-Burton were likewise imposed on the California Class members.

98.     Chavis-Burton and the California Class are all workers engaged in foreign commerce.

99.     Chavis-Burton and the California Class are all workers engaged in interstate commerce.

100.    The illegal practices DHL imposed on Chavis-Burton were likewise imposed on the California Class Members.

101.    Numerous other individuals who worked for DHL were not properly compensated for all hours worked, as required by California law.

102.    The California Class is so numerous that joinder of all members of the class is impracticable.

103.    DHL imposed uniform practices and policies on Chavis-Burton and the California Class members regardless of any individualized factors.

104.    Based on her experience and tenure with DHL, as well as coverage of the Kronos hack, Chavis-Burton is aware that DHL's illegal practices were imposed on the California Class members.

105.    California Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

106.    DHL's failure to pay wages and overtime compensation in accordance with California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the California Class Members.

107.    Chavis-Burton's experiences are therefore typical of the experiences of the California Class members.

108.    Chavis-Burton does not have any interest contrary to, or in conflict with, the members of the California Class. Like each member of the proposed class, Chavis-Burton has an interest in obtaining the unpaid overtime wages and other damages owed under the law.

109.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

110.    Absent this action, many California Class members likely will not obtain redress of their injuries, and DHL will reap the unjust benefits of violating California law.

111.    Furthermore, even if some of the California Class members could afford individual litigation against DHL, it would be unduly burdensome to the judicial system.

112.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

113.    The questions of law and fact common to each of the California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

> a.    Whether Chavis-Burton and the California Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek or 8 in a single day;
>
> b.    Whether Chavis-Burton and the California Class members were paid overtime at 2 times their regular rate of pay for hours worked in excess of 12 in a single day or the seventh day in a workweek;
>
> c.    Whether DHL's failure to pay Chavis-Burton and the California Class members their proper overtime rates violated California law; and
>
> d.    Whether DHL paid Chavis-Burton and the California Class members all wages due within the period of time allowed by California law.

114.    Chavis-Burton's claims are typical of the California Class members. Chavis-Burton and the California Class members have all sustained damages arising out of DHL's illegal and uniform employment policies.

115.    Chavis-Burton does not know of any difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

116.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA AS TO ALL PLAINTIFFS AND THE FLSA COLLECTIVE

117.    Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

118.   By failing to pay Plaintiffs and the FLSA Collective members overtime at 1.5 times their regular rates when the payments were due, DHL violated the FLSA. 29 U.S.C. § 207(a).

119.   DHL owes Plaintiffs and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

120.   Likewise, DHL owes Plaintiffs and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

121.   DHL knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Plaintiffs and the FLSA Collective members overtime compensation.

122.   Because DHL knew, or showed reckless disregard for whether, its pay practices violated the FLSA, DHL owes these wages for at least the past three years.

123.   DHL's failure to pay overtime compensation to Plaintiffs and these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

124.   Because DHL's decision not to pay overtime was not made in good faith, DHL also owes Plaintiffs and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

125.   Accordingly, Plaintiffs and the FLSA Collective members are entitled to their full overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL
### AS TO MOON AND THE ILLINOIS CLASS

126.   Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

127.   The conduct alleged in this Complaint violates the IMWL.

128.   At all relevant times, DHL was and is an "employer" within the meaning of the IMWL.

129.   At all relevant times, DHL employed Moon and all other Illinois Class Members as "employees" within the meaning of the IMWL.

130.   The IMWL requires employers like DHL to pay overtime to all non-exempt employees.

131.   Moon and the other Illinois Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

132.   Within the applicable limitations period, DHL had a policy and practice of failing to pay proper overtime to the Illinois Class Members on time and in full for their hours worked in excess of 40 hours per week. IMWL, 820 ILCS § 105/4(a).

133.   As a result of DHL's failure to pay proper overtime on time and in full to Moon and the Illinois Class Members for work performed in excess of 40 hours in a workweek, DHL violated the IMWL.

134.   Moon and the Illinois Class Members are entitled to their full overtime wages under the IMWL in an amount equal to 1.5 times their rates of pay, plus interest, attorneys' fees, costs, and all other damages allowed under the IMWL. IMWL, 820 ILCS § 105/12.

135.   Interest under the IMWL is calculated as 2% of the amount of the unpaid wages for each month following the date of the unpaid wages until paid for each unpaid employee.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE IWPCA
### AS TO MOON AND THE ILLINOIS CLASS

136.   Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

137.   The conduct alleged in this Complaint violates the IWPCA.

138.   At all relevant times, DHL was and is an "employer" within the meaning of the IWPCA.

139.   At all relevant times, DHL employed Moon and all other Illinois Class Members as "employees" within the meaning of the IWPCA.

140.   The IWPCA requires employers like DHL to pay workers at their agreed upon rates of pay.

141.   DHL obligation under the IWPCA to pay workers at their agreed upon rates of pay regardless of the basis of calculation. IWPCA, 820 ILCS § 115/3.

142.   DHL violated the IWPCA by failing to compensate Moon and the Illinois Class Members for all hours worked in Illinois at their agreed upon rates of pay.

143.   DHL was required to pay workers their wages and final compensation within the time allowed by the IWPCA. IWPCA, 820 ILCS § 115/4.

144.   DHL violated the IWPCA by failing to pay Moon and the Illinois Class Members their wages and final compensation within the time required under the IWPCA.

145.   Under the IWPCA, Moon and the Illinois Class Members are entitled to recover their unpaid wages, final compensation, and wage supplements, plus interest, attorneys' fees, costs, and all other damages allowed under the IWPCA. IWPCA, 820 ILCS § 115/14.

146.    Interest under the IWPCA is calculated as 2% of the amount of the underpayment for each month following the date of the underpayment until paid for each unpaid employee.

### FOURTH CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW AS TO CHAVIS-BURTON AND THE CALIFORNIA CLASS

147.    Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

148.    The California Labor Code requires that all employees, including Chavis-Burton and the California Class, receive 1.5x their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

149.    Despite working over 8 hours a day as part of their normal and regular shift, Chavis-Burton and the California Class did not receive proper overtime compensation for all hours worked over 8 in one day.

150.    The California Labor Code also requires that all employees, including Chavis-Burton and the California Class, receive 2x times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

151.    Although Chavis-Burton and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

152.    The California Labor Code requires that all employees, including Chavis-Burton and the California Class, receive 2x the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

153.   Although Chavis-Burton and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

154.   This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Chavis-Burton and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### FIFTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS UNDER CALIFORNIA LAW AS TO CHAVIS-BURTON AND THE CALIFORNIA CLASS

155.   Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

156.   California Labor Code section 226 requires DHL to keep accurate records regarding the rates of pay for its California employees and provide that information to Chavis-Burton and the California Class with their wage payment.

157.   Because DHL failed to pay Chavis-Burton and the California Class lawful wages, it did not maintain accurate records of Chavis-Burton and the California Class's daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Chavis-Burton and the California Class with their wages.

158.   This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Chavis-Burton and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

SIXTH CAUSE OF ACTION—WAITING TIME PENALTIES UNDER CALIFORNIA LAW
AS TO CHAVIS-BURTON AND THE CALIFORNIA CLASS

159.   Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

160.   At all relevant times, DHL was required to pay Chavis-Burton and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

161.   As a result of DHL's alleged California Labor Code violations, DHL regularly failed to pay Chavis-Burton and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly DHL owes waiting time penalties pursuant to California Labor Code section 203.

162.   The conduct of DHL, in violation of Chavis-Burton and the California Class members' rights, was willful and was undertaken by the agents, employees, and managers of DHL.

163.   DHL's willful failure to provide Chavis-Burton and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

164.   Therefore, Chavis-Burton and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

SEVENTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW
UNDER CALIFORNIA LAW AS TO CHAVIS-BURTON AND THE CALIFORNIA CLASS

165.   Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

166.   DHLhas engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices

outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) accurate wage statements; and (4) waiting time penalties.

167.    As a result of DHL'sfailure to comply with federal and state law, Rockport and Vernon have also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

168.    The relevant acts by DHLoccurred within the four years preceding the filing of this action.

169.    On information and belief, DHLhave engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Chavis-Burton and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

170.    Chavis-Burton and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

171.    Chavis-Burton and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting DHLfrom engaging in the violations and other misconduct referred to above.

172.    DHLare also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

### EIGHTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA
### AS TO CHAVIS-BURTON, AS REPRESENTATIVE OF THE LWDA,
### ON BEHALF OF HERSELF AND THE CALIFORNIA CLASS

173.    Plaintiffs incorporate all allegations set forth in paragraphs 1 to 116.

174.    Chavis-Burton and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

175.    As aggrieved employees, Chavis-Burton, as representative of the California Labor and Workplace Development Agency (LWDA), on behalf of herself and the California Class, seeks to recover civil penalties against DHL pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

176.    DHL has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

  a.    Failing to pay wages (Cal. Lab. Code §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

  b.    Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);

  c.    Violating record keeping requirements (Cal. Lab. Code § 226);

  d.    Unlawfully collecting, receiving, or withholding wages (Cal. Lab. Code §§ 221, 225.5);

  e.    Failing to pay wages promptly following termination of employment, or when due and payable (Cal. Lab. Code § 203).

177.    The civil penalties sought by Chavis-Burton, on behalf of herself and the California Class, include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

178.   Chavis-Burton, on behalf of herself and the California Class, seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Chavis-Burton and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

179.   Chavis-Burton, on behalf of herself and the California Class, will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

180.   Chavis-Burton provided notice to DHL of its California Labor Code and IWC Wage Orders violations on June 26, 2022.

181.   On the same date, Chavis-Burton submitted notice to the LWDA, as required by PAGA.

182.   Chavis-Burton's notice to DHL and the LWDA advises each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

183.   If the LWDA declines to investigate or prosecute, Chavis-Burton will pursue PAGA claims in the course of this action, on behalf of herself and the California Class.

184.   Chavis-Burton has had to retain counsel to file this action to protect the interests of herself and the California Class, and to to assess and collect the civil penalties owed by DHL to herself and the California Class.

185.   Chavis-Burton, on behalf of the LWDA, has incurred attorneys' fees and costs in prosecuting this action to recover under PAGA for herself and the California Class.

**RELIEF SOUGHT**

Plaintiffs pray for judgment against DHL as follows:

a.      For an order certifying a collective action for the FLSA claims;

b.      For an order certifying a class action for the Illinois law claims;

c.      For an order certifying a class action for the California law claims;

d.      For an order finding DHL liable for violations of federal wage laws with respect to Plaintiffs and all FLSA Collective members covered by this case;

e.      For an order finding DHL liable for violations of Illinois wage laws with respect to Moon and all Illinois Class members covered by this case;

f.      For an order finding DHL liable for violations of California wage laws with respect to Chavis-Burton and all California Class members covered by this case;

g.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Plaintiffs and all FLSA Collective members covered by this case;

h.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under Illinois wage laws to Moon and all Illinois Class members covered by this case;

i.      For a judgment awarding all unpaid wages, liquidated damages, and penalties under California wage laws to Chavis-Burton and all California Class members covered by this case;

j.      For an equitable accounting and restitution of wages due to Plaintiffs and all FLSA Collective, Illinois Class, and California Class members members covered by this case;

k.      For a judgment awarding attorneys' fees to Plaintiffs and all FLSA Collective, Illinois Class, and California Class members covered by this case;

l.      For a judgment awarding costs of this action to Plaintiffs and all FLSA Collective, Illinois Class, and California Class members covered by this case;

m.  For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Atk Plaintiffs and all FLSA Collective, Illinois Class, and California Class members covered by this case;

n.  For an order awarding 2% monthly interest on all overtime compensation due to Moon and all Illinois Class Members covered by this case, from the date the wages were due until paid;

o.  For an order awarding 2% monthly interest on all overtime compensation due to Moon and all Illinois Class Members covered by this case, from the date the underpayments were due until paid;

p.  For a judgment awarding Chavis-Burton, on behalf of the LWDA, all penalties, attorneys' fees, costs, and other relief available under PAGA; and

q.  For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Kelsey Raycroft Rose*

By: _____

**Kelsey Raycroft Rose**
BBO #692102
**MORGAN & MORGAN, P.A.**
12 Ericsson St., Ste. 2F
Boston, MA 02122
Telephone:   (857) 383-4903
Facsimile:   (857) 383-4928
Email:          kraycroftrose@forthepeople.com

**J. Corey Asay**
Kentucky Bar No.: 98665
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
333 W. Vine St., Ste. 1200
Lexington, KY 40507
Tel:   (859) 286-8368
Fax:   (859) 286-8384
Email: casay@forthepeople.com

**Andrew R. Frisch, Esq.**
Florida Bar No.: 0027777
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., Ste. 4000
Plantation, FL 33324
Telephone:    (954) WORKERS
Facsimile:     (954) 327-3013
Email: afrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
Florida Bar No.: 0015527
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:    (407) 420-1414
Facsimile:     (407) 867-4791
Email:          rmorgan@forthepeople.com

**Matthew S. Parmet**
TX Bar # 24069719
(*seeking admission pro hac vice*)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiffs**


## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

*/s/ Kelsey Raycroft Rose*

_____

**Kelsey Raycroft Rose**