UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **MARK THORPE, NICHOLAS MOON, and LATOYA CHAVIS-BURTON,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Civil Action No.** |
| **v.** | ) ) | **22-11033-FDS** |
| **EXCEL INC. d/b/a DHL SUPPLY CHAIN (USA),** | ) ) ) | |
| **Defendant.** | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND FOR JUDGMENT ON THE PLEADINGS

SAYLOR, C.J.

This is a wage-and-hour suit brought by employees of Exel Inc. d/b/a DHL Supply Chain USA ("DHL"). Plaintiffs Mark Thorpe, Nicholas Moon, and LaToya Chavis-Burton have filed suit on behalf of themselves and others similarly situated, alleging that DHL failed to pay its employees for all hours worked during a period when the company's electronic timekeeping system was disabled. The complaint alleges claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois and California labor statutes. Chavis-Burton has also asserted a claim as the statutory representative of the California Labor and Workforce Development Agency ("LWDA"), pursuant to the Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*

DHL has moved to compel arbitration on all claims brought by the named plaintiffs and current opt-in plaintiffs, except for the "representative" PAGA claim brought by Chavis-Burton.

As to that claim, it has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) for

lack of statutory standing.

For the following reasons, the motion to compel arbitration will be granted as to Counts 1

through 7; the motion for judgment on the pleadings will be denied; and the PAGA claim (Count

8) will be severed and stayed pending the outcome of arbitration.

I.     **Background**

    A.     **Factual Background**

The facts are set forth as alleged in the pleadings.

       1.     **The Parties**

Defendant Excel Inc. d/b/a DHL Supply Chain (USA) ("DHL") is a logistics company

incorporated in Massachusetts.  (Compl. p. 7 ¶ 1; Ans. ¶ 16).  DHL employs more than 400,000

workers, many of whom are non-exempt hourly and salaried workers.  (Compl. p. 7 ¶¶ 2-3).

Since at least 2021, DHL has used timekeeping software and hardware operated and

maintained by Ultimate Kronos Group.  (*Id.* p. 7 ¶ 4).  According to the complaint, Kronos was

hacked in December 2021, which interfered with DHL's ability to use the software and hardware

to track hours and pay employees.  (*Id.* p. 7 ¶¶ 5-6).  Without the electronic timekeeping system,

DHL allegedly failed to accurately track its employees' hours.  (*Id.* p. 8 ¶ 7).  Instead, it

apparently issued paychecks based on scheduled or estimated hours, or duplicated paychecks

from earlier pay periods.  (*Id.* p. 8 ¶ 9).  The complaint alleges that as a result many employees

were not paid for all hours worked after the Kronos hack, and/or were not paid the appropriate

overtime premium.  (*Id.* p. 1 ¶ 3).

Named plaintiffs Mark Thorpe, Nicholas Moon, and LaToya Chavis-Burton were non-

exempt hourly employees of DHL.  (Compl. p. 9-11 ¶¶ 23, 35, 48).  Pursuant to 29 U.S.C.

§ 216(b), Thorpe, Moon, and Chavis-Burton seek to represent "[a]ll current or former non-

exempt employees of DHL (including its subsidiaries and alter egos), who worked in the United

States at any time since the onset of the Kronos ransomware attack, on or about December 11,

2021, to the present" (the "FLSA collective").  (Compl. p. 4 ¶ 32).  Pursuant to Fed. R. Civ. P.

23, Moon seeks to represent a class of similarly situated Illinois employees (the "Illinois class"),

while Chavis-Burton seeks to represent a class of similarly situated California employees (the

"California class").  (*Id.* p. 4 ¶¶ 33-34).  Chavis-Burton has also filed suit as the statutory

representative of the California Labor and Workforce Development Agency ("LWDA"), "on

behalf of herself and all other current o[r] former employees affected by the pay practices at

issue in this lawsuit," pursuant to the Private Attorneys General Act of 2004 ("PAGA"), Cal.

Lab. Code §§ 2698 *et seq.*  (*Id.* p. 4-5 ¶ 36).

## 2.    The Arbitration Agreement

DHL's offer of employment to each plaintiff contained an arbitration agreement.  The

agreements stipulated that in accepting DHL's offer, plaintiffs agreed to "utilize binding

arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be

related in any way to [their] application for employment and/or employment, including but not

limited to . . . claims arising during [their] employment . . . ."  (Ans. Ex. A § 1 of each

Agreement).  Such claims include those relating to "wage and hour violations."  (*Id.*).  The

Agreements also provide that each plaintiff agrees to "waive any right to participate in any class

or collective action."  (*Id.* ¶ 6 of each Agreement).

Chavis-Burton's arbitration agreement also contains the following language:

> All claims brought under this binding arbitration Agreement shall be brought in
> the individual capacity of myself or the Company.  I also hereby waive any right
> to participate in any class or collective action.  This Agreement shall not be
> construed to allow or permit the consolidation or joinder of other claims involving
> any other employees or parties or permit such claims to proceed as a class or
> collective action with the exception of actions under the California Private
> Attorneys General Act ("PAGA"), which are not covered by this Agreement.  If a

3

claim under the PAGA is asserted along with other claims in an action filed with a court, I and the Company agree that the PAGA claim will be severed and stayed in court while the individual claims are arbitrated.

(*Id.* p. 11 ¶ 6).

Finally, each Agreement acknowledges the application of the Federal Arbitration Act ("FAA") to all claims subject to arbitration.  (Ans. Ex. A).

## II.    <u>Procedural Background</u>

Plaintiffs Thorpe, Moon, and Chavis-Burton filed suit in this court on June 28, 2022.  The complaint alleges eight counts.  All plaintiffs assert a claim for violations of the overtime provisions of the FLSA, 29 U.S.C. § 207(a) (Count 1).  Moon asserts the following claims on behalf of himself and the Illinois class:  violations of the overtime provisions of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/4a (Count 2); and violations of the pay provisions of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS §§ 115/3-4 (Count 3).  Chavis-Burton asserts the following claims on behalf of herself and the California class:  violations of the overtime provisions of the California Labor Code, Cal. Lab. Code §§ 510, 551-52 (Count 4); violations of the recordkeeping provisions of the California Labor Code, Cal. Lab. Code § 226 (Count 5); violations of the waiting time provisions of the California Labor Code for failure to pay wages timely after termination, Cal. Lab. Code §§ 201-04 (Count 6); and violations of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200 *et seq.* (Count 7).  Chavis-Burton also asserts a claim on behalf of herself and the California Class under PAGA, Cal. Lab. Code §§ 2698 *et seq.*, for violations of the California Labor Code and wage orders of the Industrial Welfare Commission ("IWC") (Count 8).

Following the filing of the complaint, five additional plaintiffs submitted opt-in notice

forms consenting to participate should a collective or class action be certified.[1]

On October 20, 2022, DHL filed an answer asserting as an affirmative defense that the claims asserted are subject to binding arbitration.

DHL has now moved for the court to stay this action under 9 U.S.C. § 3 and to compel arbitration on all claims except for Chavis-Burton's "representative" PAGA claim, on which it has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In the alternative, DHL moves to sever and stay the representative PAGA claim in accordance with Chavis-Burton's arbitration agreement.

## III.   Legal Standard

### A.   Arbitration Under the FAA

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of written arbitration agreements implicating interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA extends to employment cases for employees other than those engaged in the transportation of goods).  "Section 2 is the primary substantive provision of the Act . . . ."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  It provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract or
> transaction . . . shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

The Supreme Court has "described this provision as reflecting both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of

---

[1] Those individuals are Jeff Escue, Brittany France, LaTrish O'Neal, Munirah Stewart, and Sahirah Stewart.

contract.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (first quoting *Moses H. Cone*, 460 U.S. at 24, and then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  "In line with th[o]se principles, courts must place arbitration agreements on an equal footing with other contracts." *Id.*  They must also "'rigorously enforce' arbitration agreements according to their terms." *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

"A party who is seeking to compel arbitration must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011) (citation and internal quotation marks omitted).  "Whether or not a dispute is arbitrable is typically a question for judicial determination." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011).  "Therefore, 'except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter.'" *Id.* (quoting *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).

When an enforceable arbitration agreement exists between the parties, a court may enforce that agreement by staying existing litigation pending arbitration, 9 U.S.C. § 3, or compelling the parties to arbitrate and dismissing the action, 9 U.S.C. § 4.  *See DeLuca v. Bear Stearns & Co.*, 175 F. Supp. 2d 102, 106-07 (D. Mass. 2001).

### B.    Rule 12(c) Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings differs from a Rule 12(b)(6) motion to dismiss primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006).  But it is treated

similarly.  *See id.* at 54.  To survive a motion for judgment on the pleadings, a complaint must

state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Id.* at 555 (internal citations omitted).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 556).

     In determining whether a complaint satisfies that standard, a court must assume the truth

of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences.  *See R.G.

Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006).  Dismissal is appropriate if the

complaint fails to set forth "factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v.

Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano

de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).  A court may enter a judgment on the pleadings "only

if the uncontested and properly considered facts conclusively establish the movant's entitlement

to a favorable judgment."  *Aponte-Torres*, 445 F.3d at 54.

## IV.    <u>Analysis</u>

### A.    <u>Motion to Compel Arbitration</u>

#### 1.    <u>Counts 1 through 7</u>

Defendant has moved to compel arbitration of Counts 1 through 7.  Named plaintiffs

Thorpe and Moon, and opt-in plaintiffs Munirah Stewart, Escue, France, and O'Neal, have filed

a notice of non-opposition to that motion.  (Dkt. No. 42).[2]

Named plaintiff Chavis-Burton also does not oppose the dismissal of Counts 1, 4, 5, 6, and 7 in favor of arbitration.  (Dkt. No. 43).

Accordingly, Counts 1 through 7 will be dismissed without prejudice so that the claims may be pursued in arbitration.

### 2.    Count 8

Defendant has also moved to compel arbitration on what it describes as Chavis-Burton's "individual" PAGA claim, as distinct from her "representative" PAGA claim.  It contends that the claim brought under Cal. Lab. Code §§ 2698, *et seq.* contains both an individual component ("the claim arising from the alleged violations she suffered") and a representative component ("the claim she would bring on behalf of the government.").  (Def.'s Mem. at 17).  And it further asserts that the terms of Chavis-Burton's arbitration agreement require the parties "to arbitrate any individual PAGA claim."  (*Id.*).

Chavis-Burton responds that "individual" PAGA claims do not exist, because PAGA claims are entirely representative in nature.  (Pl.'s Opp'n at 12-13).  And she further contends that the arbitration agreement expressly excludes *all* PAGA claims from arbitration.  (*Id.* at 10-11).

The Supreme Court addressed the distinction between "individual" and "representative" PAGA claims in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022).  In that case, the plaintiff filed a PAGA action in a California court, alleging that her employer failed to pay her final wages after she left her position, in violation of the California Labor Code.  *Id.* at 1916.

---

[2] Sahirah Stewart filed a notice of consent to join wage claim (Docket No. 8, Ex. 7) but has not joined the other opt-in plaintiffs in the notice of non-opposition to DHL's motion.

The complaint also alleged other code violations sustained by other employees.  The parties had entered into an arbitration agreement that included a class action waiver "providing that in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action." *Id.* at 1916.  Defendant moved to compel arbitration of her "individual" PAGA claim and to dismiss the other "representative" PAGA claims.  *Id.* at 1916.  Following the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014), the trial court held that (1) categorical waivers of PAGA standing were contrary to state policy, and (2) PAGA claims could not be split into arbitrable "individual" claims and non-arbitrable "representative" claims.  *Id.*

Upon review, the Supreme Court clarified that PAGA actions are "representative" in two distinct ways.  *Id.* at 1916.  First, all PAGA claims are representative in that they are brought by employees acting as representatives of the state.  Second, they are representative when they are predicated on violations sustained by employees other than the plaintiff.  The court noted that "when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." *Id.*

The court then held that the FAA did not preempt the first *Iskanian* rule—that a wholesale waiver of the right to bring a PAGA claim is invalid.  *Id.* at 1924-25.  However, it concluded that the FAA *did* preempt the second *Iskanian* rule that "preclude[d] division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Id.* at 1924.  Because the severability clause contained within the arbitration agreement provided that any portion of the waiver that remained valid must still be enforced in arbitration, the court

concluded that the defendant could compel the plaintiff's "individual PAGA claim" to arbitration. *Id.* at 1925.

Those holdings of *Viking River* were grounded in principles of federal preemption, and are therefore binding upon state and lower federal courts. Indeed, California appellate courts have subsequently recognized the distinction between "representative" and "individual" PAGA claims, and have followed *Viking River* in holding that waivers of "representative PAGA claims" are invalid, but that agreements to arbitrate "individual PAGA claims"—those seeking to recover a civil penalty because of a labor code violation suffered by the plaintiff—may be upheld. *See e.g.*, *Galarsa v. Dolgen California, LLC*, 88 Cal. App. 5th 639, 649 (2023); *Mills v. Facility Solutions Group, Inc.*, 84 Cal. App. 5th 1035, 1063 (2022); *Gregg v. Uber Techs., Inc.*, 89 Cal. App. 5th 786, 796 (2023) ("[U]nder *Viking River*, employers may enforce an agreement mandating arbitration of a plaintiff's individual PAGA claim, even if the agreement does not require arbitration of the plaintiff's non-individual claims."). *But see Gavriiloglou v. Prime Healthcare Mgmt., Inc.*, 83 Cal. App. 5th 595, 605 (2022), *as modified on denial of reh'g* (Sept. 20, 2022), *review denied* (Jan. 11, 2023) ("What the Supreme Court called, as shorthand, an 'individual PAGA claim' is not actually a PAGA claim at all. It would exist even if PAGA had never been enacted. It is what we are calling, more accurately, an individual Labor Code claim.").

The court in *Viking River* also addressed whether the plaintiff retained standing to pursue her "representative" claims—those alleging violations suffered by employees other than the plaintiff—in a judicial proceeding after her individual PAGA claims were sent to arbitration. *Id.* at 1925. The court concluded that once the claim alleging violations she had personally suffered was severed, plaintiff was not an "aggrieved employee" as required for statutory standing under

PAGA.

Because that part of *Viking River* addressed the interpretation of a state statute and was not based on federal preemption, it is subject to revision by the California courts. *Viking River*, 142 S. Ct. at 1925 (Sotomayor, J., concurring) ("Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word.").  Indeed, there is currently a case pending before the California Supreme Court addressing that exact issue. *Adolph v. Uber Technologies, Inc.*, No. S274671 (granting review on "[w]hether an aggrieved employee who has been compelled to arbitrate claims under the Private Attorneys General Act (PAGA) that are premised on Labor Code violations actually sustained by the aggrieved employee . . . maintains statutory standing to pursue PAGA claims arising out of events involving other employees . . . in court or in any other forum the parties agree is suitable" (citations omitted)).

In sum, it appears that defendant is correct that a PAGA suit may potentially encompass both "individual" PAGA claims and "representative" PAGA claims, that "an employee's waiver of the right to bring a PAGA action is unenforceable," and that "where a predispute agreement provides for arbitrating only individual PAGA claims, that portion of the action may be split off and compelled to arbitration, while the remaining nonindividual claims remain for disposition in court." *Nickson v. Shemran, Inc.*, 90 Cal. App. 5th 121, 130 (2023).  Nonetheless, in this case, there is some question as to whether "individual" PAGA claims come within the scope of Chavis-Burton's arbitration agreement. *Soto-Fonalledas*, 640 F.3d at 474.[3]

The relevant provision reads:

All claims brought under this binding arbitration Agreement shall be brought in

---

[3] The parties do not dispute the validity of the arbitration agreement, that DHL is entitled to move for arbitration, or that Chavis-Burton is bound by the agreement. *Soto-Fonalledas*, 640 F.3d at 474.

the individual capacity of myself or the Company.  I also hereby waive any right to participate in any class or collective action.  This Agreement shall not be construed to allow or permit the consolidation or joinder of other claims involving any other employees or parties or permit such claims to proceed as a class or collective action with the exception of actions under the California Private Attorneys General Act ("PAGA"), which are not covered by this Agreement.  If a claim under the PAGA is asserted along with other claims in an action filed with a court, I and the Company agree that the PAGA claim will be severed and stayed in court while the individual claims are arbitrated.

(Arbitration Agreement p. 11 ¶ 6).

According to defendant, that "language makes clear that the only PAGA claims excepted from arbitration are representative (i.e., those on behalf of other employees besides Chavis-Burton) PAGA claims."  (Def.'s Reply at 9).  Thus, according to defendant, where the agreement states that the PAGA claim will be severed and the individual claims arbitrated, that means that the *representative* PAGA claim will be severed, while the *individual* PAGA claims will be arbitrated.

Chavis-Burton, in turn, points to the language that "actions" under PAGA are "not covered" by the agreement.  She contends that the parties intended that *any* claim brought under PAGA should be exempt from arbitration, whether individual or representative.  According to her, if the parties had intended to sever and stay only the *representative* PAGA claims while the *individual* PAGA claims were arbitrated, they could have included language to that effect, rather than referring singularly to "the PAGA claim."

In short, under the agreement, "individual claims" are arbitrable, and "PAGA claims" are not.  That leaves unanswered the question of how to handle an "individual PAGA claim."  The contentions of both parties as to how to resolve that question have considerable merit, and it is difficult to harmonize the contractual language in a way that comports with the law and common sense.

One central problem arises from the fact that there is significant overlap between Chavis-

Burton's individual claims under the California Labor Code and her PAGA claim—at least as to the alleged underlying wage violation. If her claims under the California Labor Code are arbitrable (which they clearly are), but her individual PAGA claim is not, it is unclear what effect the outcome of the arbitration proceeding would have upon the same claim brought in a subsequent court proceeding. California courts are currently split over the preclusive effect that an arbitration decision on an individual claim has on a subsequent PAGA claim. *Compare Howitson v. Evans Hotels, LLC*, 81 Cal. App. 5th 475, 489 (2022) (concluding that, for purposes of claim preclusion, employee was real party in interest in action alleging Labor Code violations in her individual capacity, but that state was real party in interest in employee's action under PAGA), *and Gavriiloglou v. Prime Healthcare Mgmt., Inc.*, 83 Cal. App. 5th 595 (2022), *as modified on denial of reh'g* (Sept. 20, 2022), *review denied* (Jan. 11, 2023) (issue preclusion did not bar the litigation of a PAGA claim following arbitrator's finding that alleged labor code violations (not brought under PAGA) had not occurred, because employee was acting in a different capacity and asserting a different right), *with Rocha v. U-Haul Co. of California*, 88 Cal. App. 5th 65, 80 (2023) (disagreeing with *Gavriiloglou*'s conclusion that a plaintiff in a PAGA action asserts a different right and in a different capacity than when appearing in a non-PAGA suit).

Complicating matters further is an apparent disagreement among some California courts as to whether such a thing as an individual PAGA claim even exists. *Compare Galarsa*, 88 Cal. App. 5th at 649, *with Gavriiloglou*, 83 Cal. App. 5th at 605.

In any event, the Court need not resolve all of those issues at this stage. One thing that is clear under the agreement is that arbitration of individual claims should proceed first, and that PAGA claims should be severed and stayed. With considerable misgivings, the Court will

interpret the contract so as not to require arbitration of a "PAGA claim," individual or not.  Thus, to the extent Chavis-Burton asserts an individual claim under the California Labor Code (or the Fair Labor Standards Act), it is arbitrable.  To the extent she asserts a "PAGA claim"— individual, representative, or both—it is not.

This outcome is consistent with the holding of *Viking River*.  There, the arbitration agreement included a wholesale waiver of any suit brought under PAGA—in other words, the apparent intent of the contract was to bar all PAGA claims.  *Viking River*, 142 S. Ct. at 1916. Here, the contract explicitly preserves plaintiff's right to bring at least some PAGA suits, without clearly differentiating between individual or representative PAGA claims.  While *Viking River* held that parties could agree to arbitrate an "individual" PAGA claim, nothing in that opinion *required* parties to agree to do so.

Once the arbitrator here has rendered a decision as to the claims of Chavis-Burton under the California Labor Code and the Fair Labor Standards Act, the next question may be the effect, if any, of that decision on the PAGA claims—including, among other things, any possible claim-preclusion or issue-preclusion effect.  Whether, at that point, the Court will exercise supplemental jurisdiction over any issues arising or asserted under California law is a question for another day.  *See Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017) (noting that "it can be an abuse of discretion—if no federal claim remains—for a district court to retain jurisdiction over a pendent state law claim when that state law claim presents a substantial question of state law that is better addressed by the state courts"); *Hernandez v. MasterCorp, Inc.*, 2020 WL 6747381, at *6 (C.D. Cal. Sept. 15, 2020) ("PAGA is purely a state law creature, and primary responsibility for developing and applying state law rests with the California courts.").

In the meantime, as the contract requires, the PAGA claims will be severed and stayed.

14

Accordingly, the motion to compel arbitration of Count 8 will be denied.

**V.**      **<u>Conclusion</u>**

For the foregoing reasons, defendant's motion to compel arbitration is GRANTED as to Counts 1 through 7.  Defendant's motion for judgment on the pleadings as to Count 8 is DENIED.  Count 8 is hereby SEVERED and STAYED pending resolution of the arbitration proceedings and further order of the Court.


**So Ordered.**


<u>/s/ F. Dennis Saylor IV</u>
F. Dennis Saylor IV
Dated: July 13, 2023                    Chief Judge, United States District Court